UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JANICE LYNETTE CROSS,

        Plaintiff,

v.                                         Case No. 1:15-cv-522
                                           Hon. Ray Kent

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.
_____/

## OPINION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) which denied her claim for supplemental security income (SSI).

Plaintiff alleged a disability onset date of April 26, 2012. PageID.252. She identified her disabling conditions as a fractured back, post traumatic stress disorder (PTSD), hard time breathing and depression. PageID.257. She has a limited education (completed the 10th grade) and had previous employment as a waitress, cook and short order cook. PageID.67, 258. An administrative law judge (ALJ) reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on September 13, 2013. PageID.60-69. This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I. LEGAL STANDARD

This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period

of not less than twelve months.  *See* 20 C.F.R. § 416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).  In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability.  First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits.  Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability.  A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities."  Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience.  Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled.  For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four.  *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003).  However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile."  *Id.*  If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary.  *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

"The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases."  *D'Angelo v. Commissioner of Social Security*, 475 F. Supp. 2d 716, 719 (W.D. Mich. 2007).  "The proper inquiry in an application for SSI benefits is whether the

plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II. ALJ'S DECISION

### A. The 2010 decision

As a preliminary matter, plaintiff had previously filed a claim for SSI alleging disability beginning August 20, 2006. PageID.148. In a decision entered on September 30, 2010, the ALJ found that plaintiff suffered from severe impairments of status post vertebrae fracture with chronic back pain, PTSD, mixed cluster B personality traits, and cocaine dependence in early remission. PageID.150. The ALJ determined that plaintiff could perform a range of light work, limited by various physical and mental restrictions. PageID.151. Ultimately, the ALJ determined that plaintiff was not disabled at step five, and that she could perform the following light work in Michigan such as packager (6,500 jobs) and cleaner (1,500 jobs). PageID.155.

In the present case, the ALJ noted that "[p]ursuant to Acquiescence Ruling 98-4(6) which incorporates *Drummond v. Commissioner of Social Security*, 126 F.3d 837 (6th Cir. 1997), I must consider the prior finding on the claimant's residual functional capacity, as well as all required findings in the sequential evaluation process by the prior ALJ." PageID.60. In addition, "[p]ursuant to Acquiescence Ruling 98-3(6), which incorporates *Dennard v. Secretary of Health and Human Services*, 907 F.2d 598 (6th Cir. 1990), I must consider a prior ALJ finding with respect to the claimant's past relevant work, date of birth, education and work experience. In the absence of new and material evidence showing a change in the claimant's condition or circumstances, so that a different finding is warranted, a subsequent ALJ is bound by the findings of a previous ALJ on these

4

issues." PageID.60-61.  The ALJ addressed his consideration under the Acquiescence Rulings as follows:

> In this instance, the evidence shows that the claimant's impairments have not significantly changed since the date of the prior ALJ hearing decision. However, the claimant's residual functional capacity has been modified, based upon new information contained in the claimant's updated treatment records. Accordingly, the undersigned has adopted those findings which are unchanged since the date of the prior hearing decision, but has also made new findings where appropriate, as described in more detail below.

PageID.61.

### B. The present case

Plaintiff's claim failed at the fifth step of the evaluation. At the first step, the ALJ found that plaintiff has not engaged in substantial gainful activity since her application date of June 29, 2012. PageID.68. At the second step, the ALJ found that plaintiff had severe impairments of status post vertebra fracture with chronic back pain, PTSD, anxiety, depression and a substance abuse disorder in remission. PageID.63. At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. *Id.*

The ALJ decided at the fourth step that:

> [T]he claimant has the residual functional capacity to lift and/or carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk 6 hours in an 8 hour workday, and sit for 6 hours in an 8 hour workday, all with normal breaks. The claimant is limited to simple, routine and repetitive tasks, simple work-related decisions, and no production rate pace work, such as assembly line work, however, the claimant can perform goal oriented work. While the claimant is limited to only occasional interaction with the public, she can tolerate frequent interaction with co-workers and supervisors.

PageID.64. The ALJ also found that plaintiff has no past relevant work. PageID.67.

At the fifth step, the ALJ determined that plaintiff could perform a significant number of unskilled, light exertional jobs in the national economy. PageID.68. Specifically, the ALJ found that plaintiff could perform the following unskilled, sedentary work in the region (defined as Southwest Michigan): house cleaner (4,000 jobs); office helper (3,000 jobs); and cafeteria room attendant (1,000 jobs). *Id.* Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, since June 29, 2012, the date the application for SSI was filed. *Id.*

### III. ANALYSIS

Plaintiff set forth five errors (with sub-issues).

**A.  The ALJ's Decision was not based on substantial evidence because he failed to give proper weight to the findings and opinion of plaintiff's treating psychiatrist, as required by 20 C.F.R. §416.927(c) and (d).**

**B.  The ALJ failed to address factors such as, but not limited to, the length of treatment, frequency of examination, and nature and extent of the treatment relationship, when he rejected the findings and opinion of plaintiff's treating psychiatrist, as required by 20 C.F.R. §416.927(c).**

Plaintiff contends that the ALJ failed to give proper weight to the opinion of her treating psychiatrist, Rachel Kaufman, M.D., who provided a statement and assessment of plaintiff's ability to perform work-related activities on July 25, 2013. PageID.614-618. A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v.*

*Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). *See* 20 C.F.R. § 416.927(c)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations").

Under the regulations, a treating source's opinion on the nature and severity of a claimant's impairment must be given controlling weight if the Commissioner finds that: (1) the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and (2) the opinion is not inconsistent with the other substantial evidence in the case record. *See Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375 (6th Cir. 2013). Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004); 20 C.F.R. § 416.927(c)(2) ("[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion").

Here, Dr. Kaufman gave a statement on July 25, 2013, which she signed on August 5th. PageID.617-618. Plaintiff's primary mental diagnosis was PTSD, with symptoms including hyper-vigilance, flashback and difficulty sleeping with nightmares. *Id.* According to the doctor,

7

plaintiff is often sleep deprived and nervous, edgy, distracted, and has difficulty staying on task, following through and being around people in normal social situations. PageID.618. Twice in the past 12 months plaintiff had episodes of increased frequency in the number of flashbacks, which occurred both night and day, intruding on her daily activities. *Id.* Dr. Kaufman also stated that plaintiff's pain had a psychological component to it, and that her condition had worsened since the Spring of 2012. *Id.*

In a mental RFC form completed on July 25, 2013, the doctor stated that plaintiff would be unable to meet competitive standards in her ability to maintain attention for two hour segments, to maintain regular attendance and be punctual within customary tolerances, to work in coordination with or proximity to others without being unduly distracted, to complete a normal workday and workweek without interruptions from psychologically based symptoms, and to perform at a consistent pace without an unreasonable number and length of rest periods. PageID.614. In Dr. Kauffman's opinion, the Plaintiff's functional limitations in activities of daily living, social functioning and in maintaining concentration, persistence or pace were all marked, and she would be absent from work more than four days per month due to her impairments or treatment. PageID.616.

The ALJ summarized and evaluated Dr. Kaufman's opinions as follows:

> The claimant's psychiatrist, Rachel Kaufman, M.D., provided a medical source opinion and sworn statements suggesting a worsening of the claimant's psychiatric condition since the spring of 2012. She also suggested that there is a psychiatric component to the claimant's "pain" symptoms. Dr. Kaufman indicated that the claimant had a number of very significant and "marked" mental limitations which would essentially preclude all full-time and competitive employment, i.e., the claimant is unable to maintain attention for two hour segments, she is unable to make simple work-related decisions, she is unable to maintain regular attendance and to be

8

> punctual within customary tolerances, and she would have absences from work in excess of 4 days a month, etc. (Ex. Bl7F, B18F, B19F). I do not agree.
>
> In contrast to the very extreme limitations suggested by Dr. Kaufman, the claimant's treatment has mostly consisted of prescriptions for antidepressants, as well as individual therapy since April 2012. She has not undergone any emergency treatment or inpatient admissions related to her psychiatric impairments (Ex. B5F). While the claimant endorsed multiple symptoms of PTSD, anxiety and depression, and she was assigned GAF scores of 47 and 51, which typically represent "serious" symptoms or serious difficulty in functioning, the claimant's therapist repeatedly noted that the claimant's presentation/condition was mostly "unremarkable" in terms of mood and affect, thought process and orientation, and behavior and functioning while the claimant was in treatment in 2011, 2012 and 2013 (Ex. B8F, B13F). The limitations suggested by Dr. Kaufman are not supported by the longitudinal treatment records of the claimant's therapist. To the contrary, the claimant's mental health impairments appear to be generally well controlled with regular and ongoing treatment and her "increase" in symptoms over the winter of 2012-2013 appears to have been mostly related to a break in treatment due to the claimant's therapist being away for three months, rather than an acute escalation in psychiatric symptoms (Ex. B13F/12).

PageID.66 (footnote omitted).

Plaintiff points out that the ALJ erred by failing to assign weight to Dr. Kaufman's opinion. The ALJ's failure to assign weight to a treating physician's opinion constitutes error. *Cole v. Astrue*, 661 F.3d 931, 938 (6th Cir. 2011). However, such an error does not require reversal if the ALJ "made sufficiently clear his reasons for discounting the opinion." *Kepke v. Commissioner of Social Security*, 636 Fed. Appx. 625, 630 (6th Cir. 2016). Here, the ALJ explained his reasons for discounting Dr. Kaufman's opinions as being extreme limitations unsupported by the medical records.

However, plaintiff also contends that the ALJ's explanation was flawed because he failed to address Dr. Kaufman's opinion under the factors set forth in 20 C.F.R. § 416.927(c). The regulations do not require the ALJ to examine each factor listed in § 416.927(c). "Although the

regulations instruct an ALJ to consider these factors, they expressly require only that the ALJ's decision include good reasons . . . for the weight . . . given to the treating source's opinion -- not an exhaustive factor-by-factor analysis." *Francis v. Commissioner Social Security Administration*, 414 Fed. Appx. 802, 804 (6th Cir. 2011) (internal brackets and quotation marks omitted). Thus, "[b]ecause the treating-source rule is not a procrustean bed, requiring an arbitrary conformity at all times, the courts excuse a decision's noncompliance with its provisions where the decision has met the procedural safeguard of providing reasons for the decision. *Id.* at 805 (internal quotation marks and citations omitted).

Viewing the record as a whole, the Court concludes that the ALJ's reasons for apparently rejecting Dr. Kaufman's opinions has not met this procedural safeguard. The crux of the ALJ's decision is that the doctor's opinion is not supported by the longitudinal treatment records from 2011, 2012 and 2013 as set forth in Exhibits B8F (69 pages) and B13F (52 pages). PageID.66, 313. However, the ALJ does not address these treatment records in any detail, other than to cite a single record from February 25, 2013. PageID.66, 550 (Exh. 13F/12). Plaintiff points out that the records of treating therapist Nancy Insidioso, MSW, LMSW, consistently document incidents of nightmares, flashbacks and hallucinations or odd perceptions throughout 2011 and up to mid-2012. PageID.379, 381, 382, 393, 395, 399, 403, 407, 410, 414, 421, 427, 431, 433, 437. Under these circumstances, where the ALJ did not assign weight to a treating psychiatrist's opinions, apparently rejected those opinions as unsupported by treatment notes spanning three years, but did not provide a basic summary of the contents of the notes, the Court concludes that the ALJ has failed to give good reasons as required under 20 C.F.R. § 416.927(c)(2). Accordingly, this matter should be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the

Commissioner should re-evaluate Dr. Kaufman's opinion in light of the treatment notes contained in Exhibits B8F and B13F.

>  **C.    The ALJ's residual functional capacity (RFC) findings are not supported by substantial evidence under 20 C.F.R. §§ 416.920 and 416.945, and SSR 98-6p.**
>
>  **1.    The ALJ did not include limitations found by the plaintiff's treating psychiatrist.**

As discussed, *supra*, the ALJ will need to re-evaluate Dr. Kaufman's limitations on remand. On remand, the ALJ should adjust the RFC to be consistent with that re-evaluation.

>  **2.    The ALJ failed to include limitations found by the DDS physicians.**

Plaintiff's main contention is that the ALJ failed to properly address Dr. Kaufman's opinion. As an alternative argument, plaintiff contends that the ALJ adopted limitations found by the non-examining DDS psychiatrist, Ruqiya Tareen, M.D., but failed to incorporate those limitations into the RFC. Plaintiff's Brief at fn. 5 (docket no. 11, PageID.659). Because the Court is remanding this matter to re-evaluate the opinions of treating physician Dr. Kaufman, the Court will not address plaintiff's alternative argument regarding the ALJ's treatment of opinions expressed by the non-examining psychiatrist Dr. Tareen.

>  **3.    ALJ Bruce committed an error of law where he was bound to include limitations found by ALJ Staller in a prior decision and failed to do so in violation of AR 98-4(6) and *Drummond v. Commissioner*, 126 F.3d 837 (6th Cir. 1997).**

As discussed in § II.A., *supra*, the ALJ acknowledged that he was bound by some aspects of the September 30, 2010 decision and stated that he adjusted plaintiff's RFC based on the

11

updated treatment records. PageID.61. However, the ALJ did not identify the particular changes made to the RFC or explain why those changes were made. It would appear that plaintiff's physical RFC remained constant from September 2010 through September 2013. In 2010, plaintiff was found capable of working at the light exertional level with 8,000 unskilled jobs being identified, while in 2013 plaintiff was also found capable of working at the light exertional level with 8,000 different unskilled jobs being identified. PageID.68, 155. It is somewhat more difficult to compare the mental RFC determinations. The 2010 decision set forth the RFC in terms of "moderate limitations" in various abilities (e.g., "the ability to set realistic goals or make plans independently of others"), while the 2013 decision is set forth the RFC in terms of actual work limitations (e.g., "[t]he claimant is limited to simple, routine and repetitive tasks, simple work-related decisions, and no production rate pace work, such as assembly line work"). On remand, the ALJ should clarify how he adjusted plaintiff's RFC and the basis for that adjustment.

>    **D.    The ALJ failed to give a proper hypothetical to the vocational expert (VE).**
>
>    **E.    The ALJ should have found plaintiff disabled based on the VE's testimony.**

An ALJ's finding that a plaintiff possesses the capacity to perform substantial gainful activity that exists in the national economy must be supported by substantial evidence that the plaintiff has the vocational qualifications to perform specific jobs. *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 779 (6th Cir. 1987). This evidence may be produced through the testimony of a VE in response to a hypothetical question which accurately portrays the claimant's physical and mental limitations. *See Webb v. Commissioner of Social Security*, 368 F.3d 629, 632 (6th Cir. 2004); *Varley*, 820 F.2d at 779. Here, plaintiff contends that the ALJ should have found

plaintiff disabled based on the VE's testimony that if plaintiff were to miss on average three days of work per month, this absenteeism would eliminate the 8,000 identified jobs. PageID.107-108. It appears that this limitation is set forth in Dr. Kaufman's opinion. PageID.616. As discussed, *supra*, the ALJ will need to re-evaluate Dr. Kaufman's limitations on remand. On remand, the ALJ should obtain additional vocational evidence consistent with that re-evaluation.

### IV.  CONCLUSION

Accordingly, the Commissioner's decision will be **REVERSED and REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner is directed to (1) re-evaluate Dr. Kaufman's opinions in light of the treatment notes set forth in Exhibits B8F and B13F; (2) if appropriate, change plaintiff's RFC consistent with that re-evaluation; and (3) if appropriate, obtain additional vocational evidence consistent with that re-evaluation. A judgment consistent with this opinion will be issued forthwith.


Dated:  September 30, 2016           /s/ Ray Kent
                                     RAY KENT
                                     United States Magistrate Judge